# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| KAREN BOUNDS, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | |
| | § | |
| BAYLOR REGIONAL MEDICAL | § | Civil Action No. 4:24-cv-995 |
| CENTER AT PLANO d/b/a BAYLOR | § | Judge Mazzant |
| SCOTT & WHITE MEDICAL | § | |
| CENTER BRAIN AND SPINE | § | |
| CENTER - PLANO, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment and Brief in Support (the "Motion") (Dkt. #16). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

### BACKGROUND

This is an age discrimination lawsuit. Defendant Baylor Regional Medical Center at Plano d/b/a Baylor Scott & White Medical Center Brain and Spine Center – Plano ("Defendant") employed Plaintiff Karen Bounds ("Plaintiff"), a former nurse in her late sixties, from February 20, 2017, until her termination on December 21, 2023 (Dkt. #1 at ¶ 5; Dkt. #16 at pp. 6, 12). At the time of her termination, Plaintiff alleges she was presented with an Employee Counseling Form that stated she was being discharged for falsifying a patient record (Dkt. #16-1 at pp. 102–103; Dkt. #19-1 at pp. 11–12). Plaintiff alleges the stated reason for her termination was pretextual and that Defendant discriminated against her because of her age (Dkt. #1 at ¶¶ 25, 28). Plaintiff is suing Defendant for alleged violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C.

§ 623, *et seq.* ("ADEA"), as amended, and the Texas Commission of Human Rights Act, TEX. LAB. CODE § 21.051, *et seq.* ("TCHRA") (Dkt. #1 at pp. 4–8). The facts that concern Plaintiff's age discrimination and retaliation claims are as follows.

Defendant hired Plaintiff to work as a nurse for Dr. Robert Haynesworth ("Dr. Haynesworth") (Dkt. #1 at ¶ 6; Dkt. #16 at p. 6). Plaintiff's job duties included getting patient paperwork ready, rooming patients, and performing other office-related duties (Dkt. #16 at p. 6). Plaintiff alleges she maintained an excellent work record with no disciplinary action taken by Defendant while she was employed (Dkt. #1 at ¶ 5). In contrast, in some written performance evaluations, starting with fiscal year 2018, Defendant recommended to Plaintiff that she improve her communication with coworkers (Dkt. #16 at pp. 7–8; Dkt. #16-1 at pp. 53–89).

In addition to feedback included in Plaintiff's annual evaluations, on August 10, 2022, Defendant gave Plaintiff a written warning which outlined Plaintiff's unprofessional communication and behavior towards her coworkers and Defendant's expectations that Plaintiff improve or correct her conduct (Dkt. #16-1 at pp. 76–77). On August 25, 2022, Plaintiff acknowledged receiving copies of the warning, Defendant's Personal Conduct policy, and Defendant's Code of Conduct (Dkt. #16-1 at pp. 76–77).

The following year, on October 11, 2023, Plaintiff reported various workplace issues to Defendant, including an allegation of age discrimination by two coworkers (Dkt. #1 at ¶ 11; Dkt. #16 at p. 8; Dkt. #16-1 at p. 92). Specifically, the two coworkers, who were Plaintiff's subordinates, made age-related comments to Plaintiff and inquired about her retirement (Dkt. #1 at ¶ 12; Dkt. #16 at pp. 6, 8–9). Defendant investigated the matter and determined that Plaintiff's allegation against one of the coworkers was partially substantiated; namely, the coworker acknowledged making

2

comments about Plaintiff's age and telling her to retire (Dkt. #1 at ¶ 15; Dkt. #16 at p. 9; Dkt. #16-1 at p. 94). As a result, Defendant directed the two coworkers to stop making comments about Plaintiff's age and retirement and provided them with its Code of Conduct and its policy on Preventing Harassment in the Workplace (Dkt. #16-1 at p. 95). Defendant further required that the coworkers complete an online training module related to inclusiveness in the workplace (Dkt. #1 at ¶ 15; Dkt. #16 at p. 9; Dkt. #16-1 at pp. 96, 98). The age-related comments ultimately ceased (Dkt. #16 at p. 9).

A couple of months later, on December 4, 2023, Plaintiff reviewed a stack of patient records known as Plans of Care ("POCs" or a "POC") (Dkt. #16 at p. 10). A POC is a medical document that outlines patient information and is often sent to other health care providers to request additional care for the patient (Dkt. #16 at p. 9). Defendant uses POCs that have three lines at the bottom of the last page—the left line is for the doctor's signature, the middle line is for the date, and the right line is for the doctor's printed name and credentials (Dkt. #16 at p. 10; Dkt. #16-1 at p. 101). The staff are allowed to print the doctor's name on the right line of the POC, but only the physician is allowed to sign their own name on the left line of the POC (Dkt. #16 at p. 10). On this day, Plaintiff admits that while reviewing a POC—a task she routinely did—she printed Dr. Haynesworth's name on the left line on the last page of one of the POCs, which was exclusively intended for his signature (Dkt. #16 at pp. 10–11; Dkt. #16-1 at pp. 100–01). The POC was ultimately sent to another clinic (Dkt. #16 at p. 11).

Shortly after, on December 6, 2023, Plaintiff met with her supervisor to discuss the POC, and Plaintiff explained that she mistakenly wrote Dr. Haynesworth's printed name in the signature line because someone had already printed his name on the right line (Dkt. #1 at ¶ 16). After the

3

POC was reviewed, Dr. Haynesworth confirmed the "signature" on the POC was not his (Dkt. #16 at p. 12), and Defendant alleges this was the first time this type of mistake occurred on a POC (Dkt. #16 at p. 11). On December 14, 2023, Plaintiff met with Defendant's Human Resources and Compliance teams about the POC, where she again admitted to mistakenly printing Dr. Haynesworth's name on the signature line (Dkt. #1 at ¶ 19; Dkt. #16 at p. 12). Finally, on December 21, 2023, Plaintiff met with the Clinic Director and was given the Employee Counseling Form, which stated her employment with Defendant was terminated because she forged a doctor's signature on a POC, the POC was processed to another clinic, and it was scanned into a patient's chart (Dkt. #16-1 at p. 102).

Defendant asserts that even if the conduct was a mistake, forgery of a physician's signature is grounds for discharge (Dkt. #16 at p. 12). In support of this position, Defendant points to its own policies. At all relevant rimes, Defendant has maintained a Code of Conduct which, among other things requires employees to "always act ethically and consistent with regulatory requirements" (Dkt. #16-1 at p. 38). On October 10, 2019, Plaintiff acknowledged receipt of the Code of Conduct (Dkt. #16-1 at p. 45). The Code of Conduct also includes a non-retaliation policy and company-initiated termination policy (Dkt. #16-1 at pp. 43, 50–51). The company-initiated termination policy outlines, in relevant part, that Defendant may initiate an employee's separation for the following reasons: (1) dishonesty; (2) falsifying company records, whether by misrepresentation or omission; (3) misconduct or wrongdoing; and (4) neglect or mismanagement of the employee's job (Dkt. #16-1 at pp. 50–51). The non-retaliation policy states: "No disciplinary action or retaliation will be taken against you when you report in good faith a perceived issue, problem, concern, or violation to management . . . or act as a whistleblower" (Dkt. #16-1 at p. 43).

Several days after her termination, on December 27, 2023, Plaintiff contacted Defendant to express she felt retaliated against after she reported the incidents of age discrimination and disagreed with the decision to discharge her based on a singular mistake (Dkt. #16-1 at p. 104). Defendant again investigated these allegations but ultimately upheld its decision to terminate her (Dkt. #16-1 at p. 104).

On February 5, 2024, Plaintiff dually filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission, alleging age discrimination and retaliation (Dkt. #16-1 at pp. 105–06). On August 14, 2024, Plaintiff received the EEOC's "Dismissal of Charge" and "Notice of Your Right to Sue" letter (Dkt. #16-1 at pp. 111–12). On November 7, 2024, Plaintiff initiated this lawsuit (Dkt. #1). On August 15, 2025, Defendant filed its Motion arguing Plaintiff's age discrimination and retaliation claims fail because Defendant can establish a legitimate, nondiscriminatory reason for Plaintiff's discharge, and Plaintiff cannot establish pretext, but-for causation, or that her age was a motivating factor in Defendant's decision to discharge her (Dkt. #16 at p. 5). The Motion is opposed (Dkt. #19). On November 3, 2025, Defendant filed its Reply (Dkt. #24). The Motion is now ripe for adjudication.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion [for summary judgment]." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. *See Solomon v. Hous. Corrugated Box Co.*, 526 F.2d 389, 396–97 (5th Cir. 1976). Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*,

672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Defendant moves for summary judgment on each of Plaintiff's ADEA and TCHRA claims (Dkt. #16). Plaintiff largely focuses her response on disputing Defendant's proffered reason for terminating her employment, arguing its decision was pretextual (Dkt. #19 at pp. 4–9). After careful review of the record and the arguments, the Court is not convinced that Defendant has met its burden, demonstrating that there is no material issue of fact as to Plaintiff claims entitling Defendant to judgment as a matter of law.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment and Brief in Support (Dkt. #16) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 10th day of December, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE