# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| KAREN BOUNDS, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | |
| | § | |
| BAYLOR REGIONAL MEDICAL CENTER AT PLANO d/b/a BAYLOR SCOTT & WHITE MEDICAL CENTER BRAIN AND SPINE CENTER - PLANO, | § | Civil Action No. 4:24-cv-995 Judge Mazzant |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Alter or Amend the Judgment, Motion for Judgment as a Matter of Law, or Alternatively, Motion for New Trial (the "Motion") (Dkt. #73). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

This is an age discrimination and retaliation lawsuit. On November 7, 2024, Plaintiff Karen Bounds ("Plaintiff") initiated this action against Defendant Baylor Regional Medical Center at Plano d/b/a Baylor Scott & White Medical Center Brain and Spine Center – Plano ("Defendant") for alleged violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623, *et seq.* ("ADEA"), as amended, and the Texas Commission of Human Rights Act, TEX. LAB. CODE § 21.051, *et seq.* ("Texas Labor Code") (Dkt. #1). On March 9, 2026, this action came before the Court for a three-day jury trial that concluded on March 11, 2026 (Dkt. #49; Dkt. #50; Dkt. #51). The facts, as presented to the jury, proceed as follows.

Defendant employed Plaintiff as a nurse from February 2017 until her termination on December 21, 2023 (Dkt. #61-4; Dkt. #70 at p. 30). At the time she was hired, Plaintiff was 59 years old (Dkt. #70 at pp. 61–62). Plaintiff was assigned to primarily assist Dr. Robert Haynesworth, a pain management physician, as his nurse (Dkt. #70 at p. 30). Plaintiff's job duties included getting patient paperwork ready, rooming patients, checking vital signs, asking questions related to the patients' medications, and performing other office-related tasks (Dkt. #70 at p. 30).

On October 11, 2023, Plaintiff reported various workplace complaints to Defendant (Dkt. #61-1; Dkt. #70 at p. 42). Specifically, Plaintiff made the following allegations: (1) management had changed Plaintiff's schedule, reducing her hours to less than 40 hours per week; (2) leadership was treating Plaintiff unfairly; specifically, one of Plaintiff's supervisors Christian Poole ("Poole"), was dismissive and short with Plaintiff, and Plaintiff was being excluded from department huddles; (3) work was being unevenly distributed throughout the clinic, which affected Plaintiff; (4) two of Plaintiff's coworkers, Liz Lucio ("Lucio") and Lee Ann Rodriguez ("Rodriguez"), discriminated against her on account of her age; and (5) Lucio and Rodriguez spoke to one another in Spanish in a shared office space, knowing Plaintiff could not understand them (Dkt. #61-1 at p. 1). Defendant's Human Resources Department investigated the matter and determined that most of Plaintiff's allegations were unsubstantiated; however, Plaintiff's allegation of age discrimination by Lucio and Rodriguez was partially substantiated because Rodriguez admitted to making comments about Plaintiff's age and telling her to retire (Dkt. #61-1 at pp. 2–3). As a result, Defendant provided a resolution and recommendation to Plaintiff, to her leadership, and to Lucio and Rodriguez (Dkt. #61-1 at p. 4).

Despite this report, Plaintiff continued with her nursing responsibilities for Dr. Haynesworth. While undertaking her assignments, she often dealt with a specific patient record known as a "Plan of Care," which is a medical document that outlines a physician's assessment of a patient and instructs physical therapists to plan of care for their patient (Dkt. #16 at pp. 9–10; Dkt. #70 at p. 32; Dkt. #61-5). Defendant uses a Plan of Care form that includes a signature box of at the bottom of the last page, noting that the treating physician has "reviewed the Plan of Care established for skilled therapy services and certif[ies] that the services are required and that they will be provided while the patient is under [the physician's] care" (Dkt. #61-5 at p. 2). This signature box has three lines—the left line is for the doctor's signature, the middle line is for the date, and the right line is for the doctor's printed name and credentials (Dkt. #61-5 at p. 2). Dr. Haynesworth's staff were allowed to print his name and credentials on the right line (Dkt. #70 at pp. 33, 35).

On December 4, 2023, two months after Plaintiff made her age-discrimination report to Defendant, Defendant's management team was made aware, by Rodriguez, that Plaintiff had "allegedly *forged* a doctor's signature on a Plan of Care" document (Dkt. #61-4 (emphasis added); Dkt. #61-17 at p. 10; Dkt. #70 at p. 127). On the day of this incident, Plaintiff admits that one of her coworkers brought her a stack of papers, consisting of what she was told were *signed* Plans of Care (Dkt. #70 at p. 33). Plaintiff testified that she flipped through the documents to see that they had all been signed but noticed that one of the lines in the Plan of Care at issue was blank (Dkt. #70 at p. 33). Plaintiff admits that she printed Dr. Haynesworth's name on the left line of this Plan of Care, which was exclusively intended for his signature (Dkt. #70 at pp. 33–36; Dkt. #61-5). Plaintiff testified she made a mistake by printing his name on the incorrect line (Dkt. #70 at pp. 33–34).

Plaintiff further testified that she did not try to sign his name or make her writing look like Dr. Haynesworth's signature (Dkt. #70 at pp. 36–37). Instead, Plaintiff testified that she was in a hurry and printed his name on the wrong line (Dkt. #70 at p. 36).

Plaintiff's supervisors met with Plaintiff, at which point she admitted to them that she had not realized Rodriguez had already printed Dr. Haynesworth's name on the right line (Dkt. #70 at p. 39). The Plan of Care at issue was scanned into the patient's chart by another individual, before being purportedly faxed to Defendant's Outpatient Department by another individual (Dkt. #70 at p. 39; Dkt. #70 at pp. 138–40). Ultimately, the patient associated with the relevant Plan of Care received the correct care from their physical therapist. In other words, Plaintiff's mistake did not affect a single patient.

On December 21, 2023, Plaintiff met with some of her supervisors, none of which represented Defendant's Human Resources Department, and was terminated (Dkt. #70 at p. 54; Dkt. #61-4). At this meeting, Plaintiff was handed an Employee Counseling Form, which stated that she was being discharged for the "[f]alsification of a patient record" on December 4, 2023 (Dkt. #70 at p. 54; Dkt. #61-4 at p. 1). The Employee Counseling Form further stated that on the date of incident, Plaintiff "allegedly *forged* a doctor's signature of a Plan of Care" (Dkt. #61-4 at p. 1 (emphasis added)). Defendant's Human Resources Business Partner, Cassandra Mills ("Mills"), reviewed the Employee Counseling Form given to Plaintiff (Dkt. #71 at pp. 28, 115). Mills testified that Plaintiff was fired because she violated Defendant's policy when she falsified a patient record by mistakenly printing a physician's name on the line intended for his signature (Dkt. #71 at p. 37). Mills further testified that Plaintiff's conduct, printing Dr. Haynesworth's name

on the line intended for his signature, constituted forgery and that mistakes cannot be made when it comes to "patient safety" (Dkt. #71 at pp. 62–63).

At trial, the jury also heard from the following witnesses who played a role in Plaintiff's termination: (1) Nardo Dumaquita, Plaintiff's manager while she was employed by Defendant (Dkt. #70 at pp. 123–87; Dkt. #71 at pp. 3–28); (2) Jason Cole, Director of Operations for Defendant (Dkt. #71 at pp. 71–136); and (3) Dimitria Hall, a Team Members Relations Consultant for Defendant's Human Resources Department (Dkt. #71 at pp. 139–54). Each of these witnesses similarly testified that Plaintiff was terminated for the "falsification" of a patient record (Dkt. #70 at pp. 172–73; Dkt #71 at pp. 84–85, 117–18, 133, 147–50).

Two months after Defendant terminated Plaintiff, Plaintiff began working for the Grayson County Children's Advocacy Center on February 24, 2024, at a reduced salary (Dkt. #70 at p. 50; Dkt. #61-9; Dkt. #61-10; Dkt. #61-11; Dkt. #61-12; Dkt. #61-13; Dkt. #61-14; Dkt. #61-15). Specifically, Plaintiff testified that had she continued working for Defendant instead of being discharged, she would have earned $257,620.83 from December 22, 2023, through that day of trial (Dkt. #70 at p. 51). However, at her new job, Plaintiff had only earned $124,652.00 through February 28, 2026 (Dkt. #70 at p. 50). Plaintiff later testified that in her job search, she could not consider nursing positions that may have paid her more but required her to travel (Dkt. #70 at p. 99). Plaintiff testified that she could not travel for more than six weeks at a time because of her husband's Alzheimer's diagnosis (Dkt. #70 at p. 99).

On March 10, 2026, both Plaintiff and Defendant rested. At no time before the case was submitted to the jury did Defendant move under Rule 50 for judgment as a matter of law (Dkt. #70; Dkt. #71). After the jury heard closing arguments, the Court read the jury instructions and the jury

began their deliberations (Dkt. #50 at p. 3). There were four liability questions that were presented to the jury: (1) age discrimination under the ADEA; (2) retaliation under ADEA; (3) age discrimination under the Texas Labor Code; and (4) retaliation under the Texas Labor Code (Dkt. #58).

On March 11, 2026, the jury returned a partial verdict, finding the following: (1) age was a motivating factor in Defendant's decision to terminate Plaintiff's employment, constituting age discrimination under the Texas Labor Code (Dkt. #58 at p. 3); (2) because of Defendant's wrongful conduct, Plaintiff should be awarded $132,968.83 in damages for past wages and benefits (Dkt. #58 at p. 5); and (3) Plaintiff did not fail to mitigate her damages (Dkt. #58 at p. 5).[1]

On March 23, 2026, Plaintiff's counsel notified the Court and Defendant's counsel, via letter, that she elected to accept the partial judgment on the jury's unanimous answers and to accept a mistrial on the claims the jury was unable to answer unanimously. On March 30, 2026, the Court issued its Final Judgment, deeming Plaintiff as the prevailing party for her age discrimination claim under the Texas Labor Code (Dkt. #62). The Court also noted the jury's award of damages and the jury's finding on Defendant's failure-to-mitigate damages defense (Dkt. #62 at p. 2).

On April 27, 2026, Defendant filed the instant Motion, asking the Court (1) to modify the Final Judgment to clarify that Plaintiff's three claims that resulted in a mistrial are dismissed with prejudice, (2) grant judgment as a matter of law in Defendant's favor, and (3) in the alternative, to grant Defendant a new trial on Plaintiff's age-discrimination claim under the Texas Labor Code

[1] The verdict was a partial verdict because the jury did not reach a unanimous answer with respect to the remaining three liability questions (Dkt. #58 at pp. 1–2, 4).

(Dkt. #73). The Motion is fully briefed (Dkt. #76; Dkt. #79; Dkt. #80). The Motion is now ripe for adjudication.

## LEGAL STANDARD

### I. Motion to Alter or Amend Judgment

The Fifth Circuit has observed that "[a]ny motion that draws into question the correctness of a judgment is functionally a motion under Civil Rule 59(e), whatever its label." *Harcon Barge Co. v. D&G Boat Rentals, Inc.*, 784 F.2d 665, 669–70 (5th Cir. 1986) (citation omitted). "Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovery evidence . . . . Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citation modified).

The Fifth Circuit recognizes that Rule 59(e) "favor[s] the denial of motions to alter or amend a judgment." *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993). The rule does not exist to be a vehicle for re-litigating old issues, presenting the case under new theories, obtaining a rehearing on the merits, or taking a second bite at the apple. *Cabalcante v. United States*, No. 4:16-cv-964, 2021 WL 2894086, at *1 (E.D. Tex. July 9, 2021) (citation modified). However, it allows a party to "question the correctness of a judgment." *Templet*, 367 F.3d at 478. The rule for reconsideration of a final judgment allows a court to alter or amend a judgment because of (1) an intervening change in controlling law, (2) the availability of new evidence not available previously, (3) the need to correct a clear error or law or fact, or (4) to prevent a manifest injustice. *See Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

### II. Motion for Judgment as a Matter of Law

Under Rule 50(a) of the Federal Rules of Civil Procedure:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

FED. R. CIV. P. 50(a)(1).

Upon a party's renewed motion for judgment as a matter of law following a jury verdict, the Court should properly ask whether "the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict." *Am. Home Assurance Co. v. United Space All.*, 378 F.3d 482, 487 (5th Cir. 2004); FED. R. CIV. P. 50(a). "A JMOL may only be granted when, 'viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion.'" *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1261 (Fed. Cir. 2013) (quoting *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838 (5th Cir. 2004)).

Under Fifth Circuit precedent, a court should be "especially deferential" to a jury's verdict and must not reverse the jury's findings unless substantial evidence does not support the findings. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000). A motion for judgment as a matter of law must be denied "unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisden*, 693 F.3d at 498 (citation modified). However, "[t]here must be more than a mere scintilla of evidence in the record to prevent judgment as a

matter of law in favor of the movant." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007).

In evaluating a motion for judgment as a matter of law, a court must "draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that [the court] might regard as more reasonable." *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 452 (5th Cir. 2013) (citation omitted). However, "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.'" *Id.* at 151 (citation omitted).

**III. Motion for New Trial**

Under Rule 59(a) of the Federal Rules of Civil Procedure, a new trial can be granted to any party to a jury trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). However,

> [u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is grounds for granting a new trial . . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

FED. R. CIV. P. 61.

> To be entitled to a new trial, Plaintiff must show that the verdict was against the great weight of the evidence, not merely against the preponderance of the evidence.

> *Dresser–Rand Co. v. Virtual Automation, Inc.,* 361 F.3d 831, 838–39 (5th Cir. 2004); *Shows v. Jamison Bedding, Inc.,* 671 F.2d 927, 930 (5th Cir. 1982). A jury verdict is entitled to great deference. *Dresser–Rand Co.,* 671 F.2d at 839. "Weighing the conflicting evidence and the inferences to be drawn from that evidence, and determining the relative credibility of the witnesses, are the province of the jury, and its decision must be accepted if the record contains any competent and substantial evidence tending fairly to support the verdict." *Gibraltar Savings v. LDBrinkman Corp.,* 860 F.2d 1275, 1297 (5th Cir. 1988).

*Taylor v. Seton Healthcare*, No. A-10-CV-650 AWA, 2012 WL 2396880, at *2 (W.D. Tex. June 22, 2012).

## ANALYSIS

Defendant's Motion seeks multiple types of relief. The Court will first consider Defendant's request that the Court modify the Final Judgment and then consider Defendant's arguments that it is entitled to judgment as a matter of law, or at a minimum, a new trial.

### I. Motion to Alter or Amend Judgment

The Court begins with the threshold issue of whether it should alter or amend the Final Judgment under Rule 59(e) to hold that three of Plaintiff's claims, age-discrimination and retaliation under the ADEA and retaliation under the Texas Labor Code, are dismissed with prejudice. In support of modifying the Final Judgment, Defendant argues that the Final Judgment issued on March 30, 2026, in its current state, is not clear that it is indeed a final judgment as to *all* claims (Dkt. #73 at pp. 8, 19 ("[Defendant] requests that the Court alter or amend its Final Judgment to clarify that it disposes of Plaintiff's three unsuccessful claims not answered by the jury and is therefore final and appealable")).

In her response, Plaintiff argues that "[t]he three claims which the jury simply did not answer, after an 'Allen Charge' constitutes a mistrial. They are not subject to a dismissal unless the Plaintiff agrees" (Dkt. #76 at p. 7). The Court agrees that the age discrimination and retaliation

claims under the ADEA and the retaliation claim under the Texas Labor Code resulted in a mistrial, but it interprets Plaintiff's response to suggest that she is opposed to dismissing these three claims. Plaintiff finally argues that the Court's Final Judgment, "completely disposed of Plaintiff's age discrimination claim under the Texas Labor Code in its entirety," and thus, in Plaintiff's view, it is a "final, appealable judgment pursuant to F.R.C.P. 54(b)" (Dkt. #80 at p. 2). The Court agrees.

Accordingly, in line with these arguments, the Court finds that severance of Plaintiff's three claims which resulted in a mistrial—age-discrimination and retaliation under the ADEA and retaliation under the Texas Labor Code—is appropriate. Further, the Court finds that the Final Judgment issued on March 30, 2026, adjudicating Plaintiff's age discrimination claim under the Texas Labor Code against Defendant and awarding damages in Plaintiff's favor, is final and appealable as to that claim as of the date of this order (Dkt. #62).

## II. Motion for Judgment as a Matter of Law, or in the alternative, Motion for New Trial

The Court now turns to Defendant's substantive arguments. Defendant argues that judgment as a matter of law under Rule 50, or at a minimum, a new trial under Rule 59 is warranted on Plaintiff's age-discrimination claim under the Texas Labor Code.[2]

### A. Rule 50

As a threshold issue, "[c]hallenges to the sufficiency of the evidence must be raised in a Federal Rule of Civil Procedure 50(a) motion for judgment as a matter of law *before* submission of

[2] Specifically, Defendant argues that "[t]he jury returned a verdict in Plaintiff's favor on only one claim—for age-discrimination under the Texas Labor Code. That claim fails as a matter of law" (Dkt. #73 at p. 8). However, in its conclusion, Defendant argues that the Court should "render a final judgment in its favor on *all* of Plaintiff's claims as a matter of law" (Dkt. #73 at p. 19 (emphasis added)). Because Defendant exclusively argues that Plaintiff only obtained a verdict in her favor as to one claim, age-discrimination claim under the Texas Labor Code, the Court will only consider Defendant's argument that it is entitled to judgment as a matter of law as to that one claim (Dkt. #73 at p. 73).

the case to the jury." *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 995 (5th Cir. 2008) (emphasis added) (citation modified); *see also Roman v. W. Mfg., Inc.*, No. 6:07-CV-1516, 2010 WL 5092977, at *1 (W.D. La. Nov. 29, 2010), *aff'd*, 691 F.3d 686 (5th Cir. 2012) ("[A Rule 50] motion may be urged after the trial has been completed *only if* a similar motion was made at the close of the trial record and *before* a verdict was rendered." (emphasis added)). This requirement "serves two basic purposes: to enable the trial court to re-examine the sufficiency of the evidence as a matter of law if, after verdict, the court must address a motion for judgment as a matter of law, and to alert the opposing party to the insufficiency of his case before being submitted to the jury." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 472 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Polanco v. City of Austin*, 78 F.3d 968, 974 (5th Cir. 1996)). "These purposes are met when the court and the plaintiff are alerted to the grounds on which the defendant contends the evidence is insufficient *prior to* the submission of the case to the jury." *Id.* (emphasis added) (citation modified).

These purposes were not met in the instant case. Defendant filed the instant Motion, after a judgment was entered, arguing, in part, that the jury's verdict is against the great weight of the evidence (Dkt. #73 at pp. 10–14). Because Defendant did not present a Rule 50(a) motion for judgment as a matter of law prior to the case being submitted to the jury, Defendant's arguments relating to the sufficiency of the evidence under Rule 50 have been waived. *See Gen. Access Sols., Ltd. v. T-Mobile USA, Inc.*, No. 2:23-CV-00158-JRG, 2026 WL 823162, at *5 (E.D. Tex. Mar. 25, 2026), *dismissed*, No. 2026-1756, 2026 WL 1879834 (Fed. Cir. June 30, 2026); *see also Perdue v. Nissan Motor Co. Ltd.*, No. 2:07-CV-546, 2009 WL 2460988, at *1 (E.D. Tex. Aug. 10, 2009) ("[Defendant] failed to put either this Court or Plaintiffs on notice of its objections to the sufficiency of the evidence prior to the close of the evidence at trial. As a result, its ability to

challenge the sufficiency of the evidence on any issue has been waived.”). Accordingly, Defendant’s motion for judgment as a matter of law under Rule 50 should be denied.

**B. Rule 59**

Having rejected Defendant’s request for judgment as a matter of law, the Court now turns to Defendant’s motion for new trial under Federal Rule of Civil Procedure 59(a). Defendant argues “a new trial is warranted on [Plaintiff’s age-discrimination claim under the Texas Labor Code] for multiple, independent reasons, including because: (1) the jury’s verdict is against the great weight of the evidence; (2) evidentiary errors plagued the trial; and (3) the jury’s damage award is excessive” (Dkt. #73 at p. 8). The Court considers each argument in turn.

**1. Weight of the Evidence**

To begin, the jury in this action returned the following verdict: (1) the jury answered “Yes” to Question No. 3, finding that age was a motivating factor in Defendant’s decision to terminate Plaintiff’s employment; (2) the jury answered “$132,968.83” to Question No. 5(a), finding that this amount of past wages and benefits would fairly and reasonable compensate Plaintiff for the damages Defendant’s wrongful conduct caused her; and (3) the jury answered “$0” to Question No. 5(b), finding that zero represented the amount by which Plaintiff’s damages could have been reduced through her reasonable diligence in seeking, obtaining, and maintaining substantially equivalent employment after the date of her discharge (Dkt. #58).

Defendant argues “[n]o evidence, much less the weight of the evidence, supports that showing, meaning the jury’s findings in Questions No. 3, 5(a), and 5(b) fail” (Dkt. #73 at p. 10). Specifically, Defendant contends that (1) “Plaintiff presented nothing more than conjecture that age had anything to do with Plaintiff’s discharge” (Dkt. #73 at pp. 10–11); and (2) “[n]o evidence, much less the weight of the evidence, supports a finding that [Defendant] held anything other than

a good-faith belief that Plaintiff violated [its] policies" (Dkt. #73 at pp. 12–13). The Court disagrees and finds that the evidence supports the jury's verdict.

With respect to the age discrimination claim under the Texas Labor Code, the jury was asked to determine whether age was a motivating factor in Defendant's decision to terminate Plaintiff (Dkt. #58 at p. 3). The Court provided the jury with the following instruction from the Business, Consumer, Insurance & Employment 2024 Edition of the Texas Pattern Jury Charge:

> A "motivating factor" in an employment decision is a reason for making the decision at the time it was made. There may be more than one motivating factor for an employment decision. If you do not believe the reason Defendant has given for terminating Plaintiff's employment, you may, but are not required to, infer that Defendant was motivated by Plaintiff's age.

(Dkt. #55 at p. 9).

Defendant did not object to the Court's jury instructions on the record. Instead, the crux of Defendant's argument in its Rule 59(a) motion for new trial is that the "evidence overwhelmingly supports [its] stated reason for firing her—that she violated [Defendant]'s employment policies" (Dkt. #73 at p. 10). In Defendant's view, no "reasonable and fair-minded jury in the exercise of impartial judgment" could disbelieve Defendant's proffered reason for terminating Plaintiff's employment; namely, that "her admitted and improper writing of a physician's name in the physician's signature block on a Plan of Care document" warranted her discharge (Dkt. #73 at p. 13). The Court disagrees.

Under the Employee Counseling Form, which Plaintiff's supervisors handed her at the time of Plaintiff's termination, Defendant's stated reason for discharging Plaintiff was the "[f]alsification of a patient record"; specifically, Defendant stated that its "management team was made aware that [Plaintiff] allegedly *forged* a doctor's signature on a Plan of Care," and Defendant

further reasoned that Plaintiff "signed the doctor's signature as if it was an accurate patient order of care" (Dkt. #61-4 at p. 1 (emphasis added)). Again, under the jury instructions, the jury was allowed to "infer that Defendant was motivated by age" when it terminated Plaintiff, if they did not believe Defendant's given reason; meaning, the jury could agree that they did not believe that Plaintiff falsified a patient record, forged a doctor's signature, or signed the doctor's signature as if it was an accurate patient order of care (Dkt. #55 at p. 9; Dkt. #61-4 at p. 1).

The evidence at trial supports this conclusion. First, Plaintiff mistakenly printed Dr. Haynesworth's name on the signature line of the plan of care at issue; she did not sign or forge his signature, and she did not attempt to make her handwriting look like Dr. Haynesworth's signature (Dkt. #70 at pp. 33–37; Dkt. #61-5). Second, Rodriguez was the individual who brought this mistake to Plaintiff's supervisor's attention, and she was the same individual that Defendant determined made discriminatory remarks to Plaintiff based on her age (Dkt. #61-1 at pp. 2–3; Dkt. #61-4). Third, the Plan of Care at issue was scanned into the patient's chart by another individual, then the Plan of Care was purportedly faxed to Defendant's Outpatient Department by another individual, and the patient received the correct care from a physical therapist (Dkt. #70 at p. 39; Dkt. #70 at pp. 138–40). Indeed, the jury heard Plaintiff's testimony that the Plan of Care at issue, which documented Plaintiff's purported forgery, was sent to the physical therapist without any incorrect instructions regarding patient care and that it did not compromise "patient safety" (Dkt. #70 at p. 39; Dkt. #71 at pp. 62–63). If the jury did not believe Defendant's proffered reason for firing Plaintiff, then it was allowed to infer that age was a motivating factor in Defendant's decision to terminate Plaintiff.

For these reasons, the Court cannot find that the jury's verdict is against the weight of the evidence. Accordingly, as to this issue, Defendant's Rule 59(a) motion for a new trial should be denied.[3]

**2. Evidentiary Errors**

The Court next considers Defendant's second argument that evidentiary errors "plagued the trial," warranting a new trial (Dkt. #73 at p. 15). "Generally, any error in admitting or excluding evidence is not grounds for a new trial." *Dragoo v. Allstate Veh. and Prop. Ins. Co.*, No. 4:16-CV-00984-O, 2019 WL 13075591, at *2 (N.D. Tex. Feb. 21, 2019) (first citing FED. R. CIV. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order"); and then citing *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 508 (5th Cir. 2012)). In fact, evidentiary rulings "may be reversed only if the ruling affects a substantial right of a party." *Id.* (citing *Marcel v. Placid Oil Co.*, 11 F.3d 563, 566 (5th Cir. 1994)). "A ruling has affected the substantial rights of the party if, when considering all of the evidence presented at trial, the ruling had a substantial effect on the outcome of the trial." *U.S. Bank Nat. Ass'n v. Verizon Commc'ns., Inc.*, 761 F.3d 409, 430 (5th Cir. 2014), *as revised* (Sept. 2, 2014).

Defendant largely asserts that the Court erred in denying some of its motions in limine and its proposed jury instructions and by overruling its objections to certain testimony. Specifically, Defendant challenges the following evidentiary errors: (1) "Plaintiff improperly introduced an irrelevant and misleading dictionary definition at trial, the prejudicial effect of which was

[3] The Court also considered the evidence supporting the jury's award of damages. *See infra* II.B.3.

compounded by denial of Baylor's requested jury instructions"; (2) "[t]he jury was likely confused and misled by testimony regarding whether the falsified signature could be fixed or caused harm"; (3) "[p]ersonal opinions, testimony, or argument that Plaintiff believed she was the victim of discrimination should have been excluded"; and (4) "[Defendant]'s substantial rights were also impacted by the denial of several of [Defendant]'s requested jury instructions" (Dkt. #73 at pp. 15–19). Having considered each challenge in full, the Court finds that there is no prejudicial error warranting a new trial.

First, Defendant takes issue with the Plaintiff's exhibit of the Cambridge Dictionary definition of the word "falsification" (Dkt. #61-8). The Court found the exhibit relevant because when Plaintiff was terminated, she was given an Employee Counseling Form that stated she was being discharged for the "falsification" of a patient record on December 4, 2023 (Dkt. #70 at p. 54; Dkt. #61-4 at p. 1). At trial, Defendant's witnesses (Mills, Dumaquita, Cole, and Hall), testified that Plaintiff was terminated for the "falsification" of a patient record (Dkt. #70 at pp. 172–73; Dkt. #71 at pp. 84–85, 117–18, 133, 147–50). In the Court's view, Defendant put the word "falsification" at the center of this litigation. Again, if the jury did not believe Defendant's stated reason for terminating Plaintiff, they were allowed to infer that Defendant was motivated by Plaintiff's age when terminating her. Plaintiff noted that the term "falsification" was not defined by any of Defendant's relevant policies, and Plaintiff's counsel referenced the Cambridge Dictionary definition of the word "falsification" to provide certain witnesses with its plain, ordinary meaning (Dkt. #61-8). The Court cannot find that this evidence was irrelevant under Federal Rule of Evidence 401.

But, as the parties know, "even relevant evidence 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *United States v. Jackson,* 549 F.3d 963, 978 (5th Cir. 2008) (quoting FED. R. EVID. 403). Here, the Court finds that the probative value of Plaintiff's dictionary definition exhibit was not substantially outweighed by the danger of confusing the issues or misleading the jury. If these dangers were of a concern to Defendant, it could have provided its own definition of the term "falsification" or defined the word in its own employment policies. Defendant did not. Thus, the jury's understanding of what it meant to "falsify" a patient record, as it was the basis of discharging Plaintiff, was fair game, and the exhibit was properly admitted.

Second, Defendant takes issue with the Court's denial of the following motion in limine: "Any evidence, testimony, or argument relating to whether the Plan of Care ("POC") at issue in this case was or could be subsequently corrected after Plaintiff's admission that she wrote the physician's name in the signature line reserved solely for the physician's signature" (Dkt. #43 at p. 1). Defendant argues that "[w]hat happened *after* Plaintiff improperly wrote the physician's name on an official medical document has no bearing on any pertinent issue regarding Plaintiff's age-discrimination claim" (Dkt. #73 at p. 17). The Court disagrees.

Mills testified that Plaintiff's conduct, printing Dr. Haynesworth's name on the line intended for his signature, constituted forgery and was a "serious patient safety issue" (Dkt. #71 at pp. 62–63, 123). In Mills's view, Defendant's decision to terminate Plaintiff was based on conduct that compromised "patient safety" (Dkt. #71 at pp. 62–63). Again, Defendant put this issue at the forefront of its own witnesses' testimony—whether Plaintiff compromised "patient safety." However, the jury heard testimony that the Plan of Care at issue could have been corrected or may

have been corrected, and multiple witnesses testified that the relevant patient received the intended physical therapy (Dkt. #70 at p. 39; Dkt. #70 at pp. 138–40).

Defendant argues that even if the Court found that this testimony was relevant, it should have been excluded under Federal Rule 403 because it wasted time or confused the issues before the jury (Dkt. #73 at pp. 17–18). Not so. Any risk of wasted time or confusion did not substantially outweigh the probative value of the evidence. Indeed, the evidence was highly probative of whether Defendant's reason for terminating Plaintiff was worthy of credence. Thus, the testimony about whether the Plan of Care at issue could be fixed or caused harm to a patient was properly admitted.

Third, Defendant takes issue with the Court's denial of the following motion in limine: "Evidence, testimony, or argument related to Plaintiff's 'personal opinion' or 'feelings' that she has been the victim of discrimination or retaliation" (Dkt. #43 at p. 1). Defendant argues that Plaintiff's testimony on this subject was "self-serving, a waste of time, and an improper attempt to opine on a legal standard" (Dkt. #73 at p. 18). Although Defendant is correct that Plaintiff cannot offer opinions on legal issues, the Court disagrees that her testimony did so.

Defendant directs the Court to the testimony it finds problematic with the following citation: "Trial Vol. 1:20-22 [App. Tab 2]; Trial Vol. 2:161-64 [App. Tab 3]" (Dkt. #73 at p. 18). The Court could not decipher where this citation was directing it to and could not identify what proposed testimony required exclusion,[4] but the Court infers that Defendant is challenging Plaintiff's recounting of the age discrimination allegations she raised against her two co-workers. Specifically, Plaintiff testified that two months before her termination, Plaintiff reported various

[4] The citation of Trial Vol. 2:161-64 does not provide the Court with proper page and line designations. For example, page 2 of Trial Volume 2 does not have 161 lines, and page 161 through 164 of Trial Volume 2 directs the Court to the Plaintiff attorneys' closing arguments (Dkt. #71). Moreover, the Court cannot identify anywhere in the record where Plaintiff testified that she had been the "victim of discrimination or retaliation."

workplace complaints to Defendant (Dkt. #61-1; Dkt. #70 at p. 42). Defendant's Human Resources Department investigated the matters and determined that Plaintiff's allegation of age discrimination by Lucio and Rodriguez was partially substantiated because Rodriguez admitted to making comments about Plaintiff's age and telling her to retire (Dkt. #61-1 at pp. 2–3). Rodriguez was the same coworker that later reported to management that Plaintiff had "allegedly *forged* a doctor's signature on a Plan of Care" document (Dkt. #61-4 (emphasis added); Dkt. #70 at p. 127). Based on this purported conduct, Plaintiff was discharged (Dkt. #61-4).

The Court finds that any testimony Plaintiff may have made suggesting that she was a "victim of discrimination" while employed by Defendant was not a self-serving narrative, a waste of time, or a legal opinion. Rather, the Court finds that this testimony was relevant to Plaintiff's attempt to rebut Defendant's purported non-discriminatory reason for terminating her. Plaintiff was recounting a determination *Defendant* made about the discriminatory comments she was receiving from her coworkers (Dkt. #61-1). It was *Defendant* that investigated and substantiated Plaintiff's allegation that Rodriguez made discriminatory comments to Plaintiff about her age; this evidence was not Plaintiff's personal belief or legal opinion. Any prejudicial effect this testimony may have had did not substantially outweigh its probative value. Thus, testimony about Plaintiff believing she was a "victim of discrimination" while employed by Defendant, if there even was any, was fair game, and thus, properly admitted.

Finally, Defendant takes issue with the Court's decision not to include some of Defendant's proposed instructions in the jury charge. "A new trial may be properly granted when the judge issues incorrect jury instructions that would taint the deliberation process; however, the movant must have made an appropriate objection, stating the grounds for the objection with particularity,

before the commencement of jury deliberations." *Alvarez v. McCarthy*, No. 6-16-CV-00172-ADA, 2020 WL 3545735, at *3 (W.D. Tex. June 30, 2020). Defendant did not object to the Court's jury's instructions on the record (*See* Dkt. #70; *see* Dkt. #71). Accordingly, because Defendant failed to make a timely objection, granting a new trial on the grounds of an improper jury instruction, Defendant's motion for new trial on this issue should be denied.

**3. Excessive Damages Award**

The Court next turns to Defendant's final argument. As a basis for a new trial, Defendant argues that the $132,968.83 awarded to Plaintiff for past wages and benefits from December 22, 2023 to the date of the jury's verdict "cannot stand because Plaintiff admitted she stopped looking for comparable work at least by the time of her deposition in July 2025, meaning she failed to mitigate her damages by at least that point" (Dkt. #73 at p. 14).

In Plaintiff's view, she secured comparable work as a nurse two months after her termination; specifically, Plaintiff asserts that her "damages model was based upon the wages she would have earned if employed with Defendant through trial minus the wages she had earned post-discharge through trial" (Dkt. #76 at p. 10). In support of this position, Plaintiff references her trial testimony and exhibits, which are found in the record: (1) Defendant discharged Plaintiff on or about December 21, 2023 (Dkt. #61-4); (2) Plaintiff secured full-time employment as a nurse in or about February 2024 (Dkt. #61-13; Dkt. #61-14; Dkt. #61-15; Dkt. #61-16); (3) Plaintiff found employment in a reasonable time frame considering her age at discharge (Dkt. #70 at p. 50); and (4) Plaintiff could not take a job that required her to travel because her husband has dementia (Dkt. #70 at p. 99).

Plaintiff also testified that had she continued working for Defendant instead of being discharged, she would have earned $257,620.83 from December 22, 2023, through that day of trial

(Dkt. #70 at p. 51). However, at her new job, Plaintiff had only earned $124,652.00 through February 28, 2026 (Dkt. #70 at p. 50). The jury awarded her the difference, $132,968.83, and the jury found that Plaintiff's past wages and benefits could not have been reduced through her reasonable diligence in seeking, obtaining, and maintaining substantially equivalent employment after the date of her discharge (Dkt. #58). This evidence amply supports the jury's damage award, and thus, Defendant is not entitled to a new trial on this ground.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Alter or Amend the Judgment, Motion for Judgment as a Matter of Law, or Alternatively, Motion for New Trial (the "Motion") (Dkt. #73) is hereby **DENIED**.

It is further **ORDERED** that the following claims Plaintiff asserted in this suit, which resulted in a mistrial, are hereby **SEVERED** into a new case with the same style:

1. Age discrimination under the Age Discrimination in Employment Act of 1967;
2. Retaliation under the Age Discrimination in Employment Act of 1967; and
3. Retaliation under the Texas Commission of Human Rights Act.

The Clerk shall **REFILE** the Original Complaint in that new case, which will be operative as to the three claims listed above.

It is further **ORDERED** that the filing fee will be waived in this new case.

It is further **ORDERED** that Defendants shall have 30 days from the date of this Order to file an answer in the new case. The Court will subsequently enter an order setting this new case for trial.

**IT IS SO ORDERED.**

**SIGNED this 10th day of August, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE